JOINER, Judge,
dissenting.
Alphonso Dudley Gillis appeals the circuit court’s denial of his timely petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P., in which he challenged his August 3, 2010, guilty-plea conviction for first-degree sodomy, see § 13A-6-63(a)(3), Ala.Code 1975, and his resulting sentence of 15 years’ imprisonment.
In his petition, Gillis alleged that he received ineffective assistance of trial counsel; specifically, Gillis asserted that his trial counsel “informed Gillis [that Gil-lis] would be eligible for [Incentive Good Time (TGT’) ] and parole,” yet, after sentencing, “discovered that he in fact was not eligible for [IGT] or parole.” (C. 16-17.) Thus, according to Gillis, his trial counsel’s “representation fell below the standard of reasonableness” and, “but for [his trial] counsel[ ]’s errors, [Gillis] would not have pleaded guilty, and would have insisted on going to trial.” (C. 20-21.) Following a hearing, the circuit court denied Gillis’s claim after finding that Gillis’s allegations were “untrue and failed to state a claim for relief.” (C. 60.) On appeal, Gillis reiterates those claims he raised below.
As I discuss below, I disagree with the main opinion’s characterization of the testL mony presented at the hearing, as well as with the main opinion’s application of the law, and I question the standard of review utilized in the main opinion. Additionally, and as discussed below, the main opinion conflicts with, among other cases, Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), Stith v. State, 76 So.3d 286 (Ala.Crim.App.2011), and Frost v. State, 76 So.3d 862 (Ala.Crim.App.2011).
*287 With respect to Gillis’s claim that his trial counsel failed to properly advise him regarding parole, the main opinion reaches the following conclusions:
“It is evident from the record that Gillis was fully informed of the question of his eligibility and still entered his guilty plea, knowing that there was a clear possibility that he was not eligible for parole.”
104 So.3d at 285. I disagree with this characterization of the testimony presented at the hearing. Specifically — and the main opinion notes this — both Gillis and his trial counsel, Mark Johnson, testified that Johnson relayed to Gillis that Johnson “felt” that Gillis would be eligible for parole, but that the law was unclear.[1] 104 So.3d at 283. Thus, contrary to the main opinion, Gillis was not “fully informed of the question of his [parole] eligibility,” 104 So.3d at 285, but instead, was fully informed of Johnson’s unclear understanding of Gillis’s parole eligibility.
Next, the main opinion attempts to distinguish this case from Frost and Stith, stating:
“In Frost and Stith, counsel had incorrectly informed the defendants of their parole opportunities and made no effort to inform them correctly.
[[Image here]]
“Here, Gillis’s counsel aggressively sought to determine his parole eligibility and fully informed Gillis of the statutes and how this change in the law might affect his possibility of parole. Gillis understood this and chose to enter his plea. Thus, even if Gillis could claim that his counsel’s performance was unreasonable or deficient, he could not prove prejudice or that, but for his counsel’s conduct, he would not have pleaded guilty.”
104 So.3d at 285. The main opinion appears to draw a distinction in the context of deficient performance between “affirmative misadvice” — trial counsel providing incorrect legal advice — and omission of advice — trial counsel failing to provide any advice; any such distinction, however, clearly conflicts with decisions of the United States Supreme Court, as well as decisions from this Court. See Padilla v. Kentucky, 559 U.S. 356,-, 130 S.Ct. 1473, 1484, 176 L.Ed.2d 284 (2010) (“[W]e agree that there is no relevant difference between an act of commission and an act of omission in this context.” (quotations omitted)); Stith v. State, 76 So.3d at 292 (“Whether denominated as an omission or a misrepresentation, counsel failed to advise Stith that if he accepted the plea agreement that called for a 10-year straight sentence the result would be that Stith would have to serve the full 10 years’ imprisonment.”).
The main opinion also concludes that, even if Gillis could demonstrate that Johnson’s performance was deficient, Gillis could not demonstrate that he was prejudiced by the deficient performance. According to the main opinion, Gillis pleaded guilty knowing that his attorney was unclear on the law regarding Gillis’s eligibility for parole and thus cannot claim to be prejudiced by his counsel’s ignorance of the law. 104 So.3d at 284. Similarly, the main opinion states that “[Johnson] made Gillis aware of his attempts to determine which law applied, and, although there may have been other avenues that defense counsel could have pursued, Gillis is not *288 entitled to the best counsel possible.... ” 104 So.3d at 285. These circular conclusions are legally untenable. In effect, the main opinion is holding that a defendant cannot be prejudiced by ineffective counsel when the counsel is admittedly ineffective. Put another way, this holding would require a defendant to evaluate the legality of his counsel’s questionable advice before relying on it. These conclusions implicate a defendant’s right to counsel; a defendant, however, may not waive the right to effective assistance of counsel absent an express waiver, and a holding to the contrary conflicts with precedent from the United States Supreme Court. See Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (addressing waiver of the right to counsel and noting that “[i]t has been pointed out that courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights”).
Finally, I disagree with the standard of review applied in the main opinion. Specifically, the main opinion states that
“[w]hen there is conflicting testimony as to a factual matter, such as the conflict here between Gillis and his trial counsel, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, and its factual determinations will not be disturbed unless they are clearly contrary to the evidence.”
104 So.3d at 286.
As the main opinion correctly notes, both Gillis and his trial counsel, Mark Johnson, testified that Johnson “felt” that Gillis would be eligible for parole, but that he was unclear on the law. Although there is conflicting evidence regarding whether Gillis was advised regarding incentive good time, there is no conflict in the testimony regarding what Johnson communicated to Gillis regarding his eligibility for parole. When evidence is undisputed, this Court does not apply an abuse-of-discretion standard but instead applies a de novo standard. See Ex parte White, 792 So.2d 1097, 1098 (Ala.2001). Nevertheless, even if we were to conclude that there is some measure of conflict in the testimony and that an abuse-of-discretion standard is appropriate, Johnson and Gillis generally agree on the nature of the advice given to Gillis — that Johnson “felt” that Gillis would be eligible for parole but was not sure — and any factual conclusion to the contrary would be unsupported by the testimony presented at the hearing.
Gillis and Johnson both testified at the hearing that Johnson advised Gillis that he “felt” that Gillis would be eligible for parole, but that Johnson was unclear on the law. (R. 14, 47.) Specifically, Gillis testified that Johnson stated that “there was a conflict [in the law] ... because of laws being changed in 2005” and that Johnson was concerned because the incident giving rise to the charge against Gillis was alleged to have occurred in 2002. (R. 14.) Similarly, Johnson testified as follows at the hearing:
“[DEFENSE COUNSEL:] The difference in the law, was it regarding good time, or was it regarding parole that you were concerned with?
“[JOHNSON:] I was concerned about the amount of time he would have to serve before he might be eligible for parole, if he was going to be eligible for parole or anything in between. It wasn’t the issue of good time.
[[Image here]]
“[DEFENSE COUNSEL:] So you contacted the Attorney General’s Office regarding whether or not it would fall under the old law and he would be eligible for parole, or whether or not — are
*289 you referring to the new law of a child under twelve, you’ve got to serve a hundred percent day for day?
“[JOHNSON:] Yes. There was an issue about eighty-five percent. And then they changed it to a hundred. The issue was whether or not the new law was going to go back and catch this case from several years before it was enacted.
[[Image here]]
“[DEFENSE COUNSEL:] What did you find out from the Attorney General’s Office?
“[JOHNSON:] They weren’t absolutely a hundred percent sure, but they thought he was going to be eligible for parole, but it wasn’t going to be an eighty-five percent type case or a hundred percent type case. They couldn’t tell me for absolute certainty. And that is what I relayed to [Gillis],
“[DEFENSE COUNSEL:] You discussed that regarding the parole issue with Mr. Gillis?
“[JOHNSON:] Absolutely. That was the whole point of calling them.”
(R. 39-41 (emphasis added).) However, as explained below, Johnson’s advice — that Gillis “was going to be eligible for parole, but it wasn’t going to be an eighty-five percent type case or a hundred percent type case” — was incorrect.
Although it is unclear on what date the offense occurred, it was Gillis’s unrefuted testimony at the hearing that the charge arose from an incident that occurred in 2002; if Gillis’s offense occurred in 2002, Gillis will be required to serve 85 percent of his sentence before being considered for parole. See Art. I, § 9, Alabama Board of Pardons and Paroles Rules, Regulations, and Procedures (“Excluding those crimes committed prior to March 21, 2001, when an inmate is convicted of one or more of the following Class A felonies, the initial parole consideration date shall be set in conjunction with the inmate’s completion of eighty-five (85) per cent of his or her total sentence or fifteen (15) years, whichever is less, unless the designee finds mitigating circumstances: ... Sodomy I_” (Emphasis added.)). This provision — the substance of which has been in effect since March 2001 — is available on the Board’s Web site. See Ala. Admin. Code (Alabama Board of Pardons and Paroles) r. § 640-X-3-.01(l) (effective May 14, 2002) (noting that “[t]he guidelines adopted pursuant to § 15-22-27(e) for scheduling parole consideration ... are available from the Board’s offices at cost, or they may be downloaded or printed directly from the Board’s web-site” and that the “guidelines are contained within the Board’s internal operating procedures”).
If, however, the date of Gillis’s offense was on or after October 1, 2005, Gillis has no chance for parole. As this Court stated in Frost:
“Section 15-22-27.3, Ala.Code 1975, effective October 1, 2005, states that ‘[a]ny person convicted of a criminal sex offense involving a child as defined in subdivision (5) of Section 15-20-21 which constitutes a Class A or B felony shall not be eligible for parole.’ Section 15-20-21(5), Ala.Code 1975,[2] defines a ‘criminal offense involving a child’ as ‘[a] conviction for any criminal sex offense in which the victim was a child under the age of 12 and any offense involving child pornography.’ Sodomy in the first degree and sexual abuse of a child less than 12 years old are Class A and B felonies, respectively. See § 13A-6-63 and § 13A-6-69.1, Ala.Code 1975.”
*290 Frost, 76 So.3d at 865. Like the defendant in Frost, Gillis was convicted of first-degree sodomy where the victim was under the age of 12 and, as such, under § 15-22-27.3, Ala.Code 1975, Gillis is ineligible for parole if the offense occurred after the effective date of § 15-22-27.3, Ala.Code 1975.[3]
In light of the foregoing, it is unclear how the main opinion can hold that “[Johnson] neither omitted to apprise Gillis of his possibility of parole nor did he commit ineffectiveness by informing him that he would be eligible for parole.” 104 So.3d at 285. To the contrary, the testimony presented at the hearing establishes that, at best, Gillis was “informed” that his attorney did not know the law and, at worst, was misinformed by Johnson about parole eligibility. Although the main opinion touts that this Court must “indulge a strong presumption that counsel’s conduct falls within the range of reasonable professional assistance,” 104 So.3d at 284, and that Johnson’s “performance is not to be evaluated with the aid of hindsight,” 104 So.3d at 285, neither a presumption of correctness nor hindsight overcomes Johnson’s testimony that establishes that the legal advice given to Gillis was incorrect.
Like the trial attorneys in Padilla, Stith, and Frost, Johnson could have easily determined from a reading of the Board’s Web site or a reading of § 15-22-27.3, Ala.Code 1975, that because Gillis was charged with a criminal sex offense involving a child less than 12 years of age, Gillis would, at best, be eligible for parole after serving no less than 85 percent of his sentence. Frost, 76 So.3d at 868. Johnson’s advice — that Gillis “was going to be eligible for parole, but it wasn’t going to be an eighty-five percent type case or a hundred percent type case” — was inconsistent with the law and, thus, constituted deficient performance.[4] Frost, swpra.
Gillis pleaded and proved at the hearing that, but for the advice of counsel, he would not have pleaded guilty; specifically, Gillis testified that Johnson’s advice was the “reason [he] plead” and that he would “spend a little time in prison and get out and get [his] name cleared. And it [would] be over with.” (R. 11.) In light of nearly undisputed evidence of the advice provided by Johnson to Gillis, as well as Gillis’s undisputed testimony that he pleaded guilty because he believed that he would be eligible for parole, I would reverse the decision of the circuit court and instruct the circuit court to grant Gillis’s petition *291 for postconviction relief. Frost, supra. For these reasons, I dissent.
WELCH, J., concurs.

. See R. 14 (Gillis testifying that he was told by Johnson that he would be eligible for parole and good time, but that there was a conflict in the law); R. 39 (“I [Johnson] was concerned about which law he was going to be sentenced under or have to abide under, which was the concern of mine regarding his parole issue.”); R. 47 ("What I [Johnson] told [Gillis] was I felt like he was going to be eligible for parole.”).

. § 15-20-21, Ala.Code 1975, was repealed effective July 31, 2011.

. Without deciding the issue of the retroactivity of § 15-22-27.3, Ala.Code 1975, we note that "[i]n Alabama, retrospective application of a statute is generally not favored, absent an express statutory provision or clear legislative intent that the enactment apply retroactively as well as prospectively.” M.H. v. State, 6 So.3d 41, 49 (Ala.Crim.App.2008) (quotations and citations omitted).

. As the United States Supreme Court recognized, there will be situations in which the consequences of a plea are “unclear or uncertain” and, in those cases, the responsibility of an attorney is limited; this, however, is not one of those cases. Padilla, 559 U.S. at-, 130 S.Ct. 1473 (“There will ... undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." (emphasis added)). In a case such as this one, where the law is clear, trial counsel cannot be absolved of his or her responsibility to render effective assistance by simply advising the client that the law is unclear.